**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVE HICKMAN,                         :
                                                     Civil Action No. 10-2616 (JBS)
        Petitioner,   :

        v.                     :   **OPINION**

DONNA ZICKEFOOSE,                      :

        Respondent.   :

**APPEARANCES:**

Steve Hickman                    Mark Christopher Orlowski
F.C.I. Fort Dix                  Assistant U.S. Attorney
P.O. Box 2000                    District of New Jersey
Fort Dix, NJ  08640              402 East State Street
    Petitioner Pro So            Room 430
                                 Trenton, NJ  08608
                                    Counsel for Respondent

**SIMANDLE**, District Judge:

    Petitioner Steve Hickman, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Donna Zickefoose. The principal issue to be decided is whether the decision of the

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Bureau of Prisons denying Petitioner's request for early transfer to a pre-release confinement center violated the requirements of federal law, particularly the Second Chance Act, codified at 18 U.S.C. § 3624(c).

Because it appears from a review of the Petition and of Respondent's Answer that Petitioner is not entitled to relief, the Petition will be denied.

## I.   BACKGROUND

### A.   The Second Chance Act

Title 18 Section 3621(b) governs Bureau of Prisons inmate placement decisions, generally, and provides:

> (b)  Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1)  the resources of the facility contemplated;
> (2)  the nature ad circumstances of the offense;
> (3)  the history and characteristics of the prisoner;
> (4)  any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> (5)  any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 ... .

> ... Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

In general, community corrections facilities are "penal or correctional" facilities within the meaning of § 3621(b) and a prisoner can be placed at a community corrections facility at any time during his imprisonment. See, e.g., Miller v. Federal Bureau of Prisons, 147 Fed.Appx. 302 (3d Cir. 2005).

A separate provision, 18 U.S.C. § 3624(c), governs the BOP's obligation to facilitate inmates' re-entry into society, and permits the BOP, among other things, to place prisoners in pre-release community confinement. Prior to 2007, § 3624(c) provided:

> (c) Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

Section 3624(c) was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Second Chance Act extends to twelve months the maximum period of pre-release community confinement that the BOP must consider

in connection with an inmate's pre-release planning.  The Second Chance Act provides, in pertinent part:

> (1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> ...
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> ...
>
> (6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
>> (A) conducted in a manner consistent with section 3621(b) of this title;
>>
>> (B) determined on an individual basis; and
>>
>> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

Thus, the current <u>obligation</u> of the BOP, under § 3624(c), to consider a twelve-month <u>pre-release</u> RRC placement does not limit

the BOP's discretion, under § 3621(b), to confine a prisoner in an RRC, at any time, for any period.

As noted in the statute, the BOP was directed to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement determinations would be conducted consistently with 18 U.S.C. § 3621(b), that the determinations would be individualized, and that the duration of placements would be sufficient.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the pre-release provisions of the Second Chance Act. The April 14 Memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above. Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

5

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F.Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' pre-release placement decisions to RRCs or home detention. See 28 C.F.R. §§ 570.20-570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.[2]

---

[2] Title 28 of the Code of Federal Regulations, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which provides:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

6

On November 14, 2008, after issuance of the new regulations, the BOP issued an additional internal guidance memorandum.  The November 14 Memorandum provides guidance to BOP staff for considering and responding to inmate requests for transfer to RRCs when <u>more</u> than twelve months remain to the inmate's projected release date.[3]  More specifically, the November 14 Memorandum provides, <u>inter</u> <u>alia</u>:

> Individualized Consideration Required
>
> Inmates are legally eligible to be placed in an RRC at any time during their prison sentence.  Federal Courts have made clear that RRCs <u>are</u> penal or correctional facilities within the meaning of the applicable statutes.  Staff cannot, therefore, <u>automatically</u> deny an inmate's request for transfer to a RRC.  Rather, inmate requests for RRC placement must receive individualized consideration.  In other words, staff <u>cannot</u> say that an inmate, whatever the circumstances, is <u>automatically ineligible</u> for transfer to a RRC.  Rather, staff must first review the inmate's request on its individual merits, in accordance with policy, and as explained in this guidance.
>
> Timing of Reviews
>
> If an inmate requests transfer to an RRC prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer.  There is no need, however, to immediately perform the individualized review at the moment it is submitted.  Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review. [footnote omitted]

---

28 C.F.R. § 570.21.

[3] The November 14 Memorandum specifically notes that the previous guidance contained in the April 14 Memorandum "remains in full effect."

> When informing inmates of the timing for review of
> transfer requests, it is vitally important that staff
> <u>not</u> inform the inmate (either orally or in writing)
> that he/she is <u>ineligible</u> for transfer to a RRC.
> Telling an inmate that he/she is <u>ineligible</u> for RRC
> placement is the same as <u>automatically</u> denying the
> inmate from even being considered for such placement,
> and is not in accord with Bureau policy.

BOP Memorandum, November 14, 2008 (attached as Exhibit 2 to Declaration of Kevin Bullock, attached to Respondent's Answer) (emphasis in original).

B.   <u>Petitioner's Claims and Application of the Act</u>

Petitioner is a federal prisoner serving an aggregate 300-month term of imprisonment, pursuant to his conviction in the United States District Court for the Eastern District of North Carolina on various drug offenses.  See <u>United States v. Hickman</u>, Criminal No. 93-0144 (E.D.N.C.).  Assuming Petitioner receives all good conduct time available, his projected release date is August 20, 2015.

Petitioner arrived at FCI Fort Dix on April 2, 2008.  On August 14, 2009, Petitioner submitted a Request Form to his Case Manager, Mr. Bullock, requesting to be immediately considered for transfer to an RRC, a Community Corrections Center ("CCC"), or a halfway house, to serve out the rest of his sentence.[4]  In that

---

[4] As part of his official duties as a Case Manager, Mr. Bullock, along with the rest of the Unit Team, meets with inmates periodically during Program Reviews, during which they discuss the inmate's institutional programming and make recommendations to meet inmates' needs.  Program reviews occur at least once every 180 days; when an inmate is within 12 months of projected

8

Request Form, Petitioner argued that he had served over 60 percent of his sentence and that he should be considered for a less-restrictive placement. In that Request Form, he also argued that the BOP has the authority to transfer a prisoner to an RRC, a CCC, or a halfway house, "at any time." The parties further agree that Mr. Bullock advised Petitioner that he would not be considered for transfer to an RRC until 17-19 months prior to Petitioner's projected release date. Petitioner then pursued his administrative remedies.[5]

---

release date, staff will conduct a Program Review at least once every 90 days. See BOP Program Statement 5322.12, "Inmate Classification and Program Review," at p. 5.

[5] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Here, Petitioner asserts that exhaustion of his administrative remedies would be futile. It is clear, however, that he did exhaust his administrative remedies.

9

At the BP-8, Informal Resolution level, on September 1, 2009, Correctional Counselor Sanchez summarized the Unit Team's consideration of Petitioner's individual needs for RRC placement.

> This is in response to your allegation of staff, depriving you of the right for consideration and placement in a residential reentry center upon serving 60% of a 300 month sentence with 60 months remaining on your current sentence; conspiracy to distribute and possession with intention to distribute cocaine.
>
> Investigation has revealed that you are projected for release, via good conduct time, on August 20, 2015. Investigation has revealed you arrived at FCI Ft. Dix on April 2, 2008; subsequently (within 30 days of your arrival) you had met with your unit team for program review and have continued to do so on a regular basis with your next team review taking being scheduled for September 30, 2009. However, you will not be considered nor will there be a discussion entertaining "Residential Release Center" placement until at a minimum you are 17-19 months away from your projected release date.
>
> In summary, pursuant to the "Second Chance Act of 2007," the Unit Team conducted a review of your individual needs for Residential Re-Entry Center (RRC) placement. In point, the unit team contemplated the resources of the facility, the nature and circumstances of your offense, your criminal history and characteristic, any statement of the court that imposed the sentence, and any pertinent policy statement issued by the United States Sentencing Commission. As a component of the above factors, the Unit Team has considered your individual needs for services and public safety. As a result of the Unit Team's review of the aforementioned criteria, the Unit Team has postponed discussion or recommendation to a residential reentry center of sufficient duration to provide you the greatest likelihood of successful reintegration into the community. It has been determined to monitor your inmate skills development and your application towards your team review recommendations.
>
> Your request for immediate transfer to a RRC is hereby denied.

(BP-8, Response of Correctional Counselor Sanchez, Attached to Petition.)

At each further level of the administrative remedy process, Petitioner was advised that the Unit Team would consider his request for RRC placement approximately 17-19 months in advance of his projected release date.

In this Petition, dated May 17, 2010, Petitioner asserts that he is challenging "the vague and ambiguous policy adopted by the Bureau of Prisons (BOP) in 2002 or 2005." (Petitioner's Brief attached to Petition at 1.)  Elsewhere, Petitioner contends that the BOP's reliance on the pre-release RRC policy, (presumably Petitioner is referring to the pre-release RRC placement policy implementing § 3624(c)), in denying his transfer request, is at odds with § 3621, which permits placement in an RRC at any time.  (Petitioner's Brief at 4.)  He requests an order immediately transferring him to an RRC for the remainder of his sentence.

## II.  ANALYSIS

The Court of Appeals for the Third Circuit has previously held that the BOP's 2005 regulations interpreting § 3621(b) and § 3624(c), as they existed at that time, were invalid.  See Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005) (relying upon Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), both of which

found the BOP's 2002 CCC placement policy unlawful).  This Court need not address the validity of the 2002 and 2005 regulations regarding CCC placement, however, despite Petitioner's contentions, because there is no evidence that Petitioner's placement decision in 2009 was based upon those regulations rather than upon the governing statutes as they existed in 2009, as well as the April 14, 2008, Memorandum, the October 2008 regulations, and the November 14, 2008, Memorandum.

   Nor does the evidence support Petitioner's contention that the BOP improperly refused to exercise its discretion to consider him for RRC placement under § 3621(b), earlier than the BOP is required to consider him for pre-release RRC placement under § 3624(c).  To the contrary, Correctional Counselor Sanchez's response to Petitioner's administrative remedy request makes clear that the Unit Team had already considered Petitioner's individual need for an RRC placement, pursuant to the criteria detailed in § 3621(b), and had determined to "postpone" discussion or recommendation to an RRC while it monitored Petitioner's inmate skills development and application towards the Unit Team's recommendations.  Thus, the Unit Team properly considered Petitioner for an early placement into an RRC and properly exercised its discretion to deny such placement based upon the factors enumerated in § 3621(b).  Later levels of review emphasized that Petitioner would be considered for pre-release

transfer to an RRC at the appropriate time.  Petitioner has presented no evidence of abuse of discretion in the Unit Team's response or in later levels of review of that decision.  Nor, indeed, has Petitioner presented to this Court any reason why consideration of the factors enumerated in § 3621(b) should result in community confinement at this time.  Cf., e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983) (it is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement); Chaides v. Rios, 2010 WL 935610 (E.D. Cal. Mar. 15, 2010) ("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after considering the factors set forth in second 3621(b)." (citation omitted)).  Instead, it is clear that Petitioner simply prefers community confinement to confinement in a prison setting.

Thus, based on the foregoing, this Court finds that the BOP complied with the requirements of the Constitution, § 3621(b), and its own regulations, and Petitioner has not demonstrated that he "is in custody in violation of the Constitution or law or treaties of the United States ...," as required for relief under 28 U.S.C. § 2241.

13

III.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

<u>s/ Jerome B. Simandle</u>
Jerome B. Simandle
United States District Judge

Dated: **May 12, 2011**